# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**ALFRED ALVAREZ,**

      **Plaintiff,**

**vs.**                             **Case No. 4:14cv410-MW/CAS**

**DOUG CRAVEN
and J. SCHWEINSBERG,**

      **Defendants.**

_____/

## SECOND REPORT AND RECOMMENDATION

Previously, a motion to partially dismiss the pro se Plaintiff's fifth amended complaint was filed by Defendants Schweinsberg and Craven, ECF No. 100. The motion was granted in part as to Plaintiff's request for punitive damages, but was otherwise denied. ECF Nos. 110, 115. Defendants filed an answer, ECF No. 117, and the parties conducted discovery. Thereafter, Defendants filed a motion for summary judgment, ECF No. 128, and Plaintiff was advised of his obligation to file a response in opposition to the motion. ECF No. 129. Plaintiff has responded, ECF No. 138, and the motion is ready for review.

**Background**

In January 2015, Plaintiff's second amended complaint was dismissed *sua sponte* for failure to state a claim.  ECF No. 25.  The Eleventh Circuit Court of Appeals affirmed in part, and reversed and remanded in part as to count III, Plaintiff's First Amendment claim.  ECF No. 51.  The Eleventh Circuit concluded that Plaintiff's challenge to his first confinement resulting from a disciplinary report was properly dismissed under O'Bryant v. Finch,  637 F.3d 1207 (11th Cir. 2011), ECF No. 51 at 17, but that a second allegedly retaliatory confinement was overlooked.  *Id.* at 19.  The Eleventh Circuit determined that Plaintiff's complaint stated a claim against two Defendants, Craven and Schweinsberg, as to the close management confinement imposed in August 2012, allegedly "after a long series of persistent complaints from Plaintiff, his family, and his friends . . . ."  *Id.* at 15-16.

The case was again referred to the undersigned magistrate judge, ECF No. 65, and Plaintiff ultimately filed a fifth amended complaint, ECF No. 72, clarifying his claims.  Plaintiff alleged that he suffered retaliation by the Defendants due to "his persistent requests and grievances" as well as complaints made by his family on his behalf.  *Id.* at 11.  Plaintiff alleged that Defendants retaliated against him by placing him on "close management"

status and denying him privileges generally afforded to other inmates. As a result, Plaintiff ceased seeking assistance regarding what he alleged to be a continued "need for interstate compact transfer." *Id.* at 9-11.

**Allegations of Fifth Amended Complaint**

The alleged events took place at Washington Correctional Institution in 2012.[1] ECF No. 72 at 5. Plaintiff was moved to that institution during a period of time in which Wakulla C.I.'s "protective management unit" was closed *Id.* Plaintiff alleged that while he was housed at Wakulla, the Institutional Classification Team ("ICT") recommended Plaintiff for an Interstate Compact Transfer. *Id.* The request was denied at the Department of Corrections' Central Office, but Plaintiff was kept in protective management ("PM") status. *See* ECF No. 138 at 105, 115. The PM unit was subsequently transferred from Wakulla to Washington.

Defendants are sued in their individual capacities only. ECF No. 107 at 1; *see also* ECF Nos. 102, 104. At the time of the alleged events, Defendants were located at Washington C.I. with Plaintiff, but Defendant Schweinsberg is now a Colonel at Marion Correctional Institution. ECF No.

---

[1] Washington C.I. is now called the Northwest Florida Reception Center. ECF No. 128 at 9, n2.

128-9 at 1 (Ex. H).  Defendant Craven retired from the Department of Corrections.  ECF No. 128-8 at 2 (Ex. G).

At the motion to dismiss stage of this litigation, Defendants argued that Plaintiff's request for injunctive relief (to have his disciplinary record expunged) "should be dismissed as it is improper."  ECF No. 100 at 3. Without explanation, Defendants argued they could not provide "Plaintiff with the injunctive relief which he requests."  *Id.* at 4.  Defendants said they had "no authority to expunge any records from Plaintiff's inmate file."  *Id.* at 5.  Plaintiff, however, argued that they were in a position with "the authority to expunge Plaintiff's CM records."  ECF No. 107 at 2-4.  Because Defendants did not *demonstrate* that ICT members lacked authority to expunge a prisoner's disciplinary record if it were determined that an imposed discipline was unlawful, the motion to dismiss was denied without prejudice as to that issue.  The parties were permitted to re-address the issue at the summary judgment stage of litigation with supporting evidence.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *see also* First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) (noting that "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

of the truth at trial."). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct. at 2578 (noting the distinction "between evidence of disputed facts and disputed matters of professional judgment."),[3] but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for

---

[3] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec.</u>

<u>Indus. Co.</u>, 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**Relevant Rule 56(e) Evidence**

Plaintiff is serving a life sentence in the Florida Department of

Corrections.  ECF No. 138 at 6; Defendants' Ex. A (ECF No. 128-2 at 2-3).

Plaintiff is currently in protective management (PM) status, and has been

since 2008.  ECF No. 138 at 1.  Plaintiff contends that PM status is

inadequate to protect him and he sought transfer out of state, *id.* at 3, due

to events that need not be specified in this Report and Recommendation.[4]

*See Id.* at 6-7; Defendants' Ex. B (ECF No. 128-3 at 2-3).

On August 29, 2012, a "referral" was made by Classification Officer

L.K. Swearington, recommending that Plaintiff be placed in close

management II ("CM II") status due to information obtained which revealed

that Plaintiff was fabricating threats against him so as to manipulate the out

of state transfer.  ECF No. 128-3 at 2 (Ex. B).  The recommendation stated

that Plaintiff was attempting "to build credibility" to his claims that his life

was in danger by involving family who would contact prison officials."  *Id.*

Plaintiff was notified of the recommendation on August 30, 2012, by Officer

---

[4] Safety concerns led to Plaintiff's filing of a motion to seal certain documents in
this case, ECF No. 139, which was granted without objection.  ECF No. 147.

J.M. Santiago, and advised that he could submit information to the ICT to be considered.  *Id.*

A hearing was held by the ICT on September 5, 2012, to consider the recommendation.  *Id.*  Present for the hearing were the two named Defendants as well as Chairperson Charles C. Sexton.  *Id.*  Plaintiff was able to make a statement and said the basis for the recommendation was "totally lies."  *Id.* at 4.  The classification officer's recommendation was approved by the ICT on September 6, 2012.  *Id.*  The report of the team's decision stated:

> ICT concurs with the referral submitted by SCLO L.
> Swearington recommending inmate Alvarez be placed in close
> management II.  Inmate Alvarez has made several attempts to
> fabricate threats by involving other inmates as well as family
> members.  He had planned an assault on himself in order to
> manipulate a transfer.  He has demonstrated he will sacrifice
> any person's safety and the security of the facility in order to
> manipulate the protective management process in his favor.

ECF No. 128-3 at 3.

The recommendation was based on a disciplinary report, log # 125-120484, which charged Plaintiff with "attempt to conspire."  ECF No. 128-4 (Ex. B).  The disciplinary report (DR) detailed that information had been received during a search on another inmate's cell and locker which revealed that Plaintiff (while in PM) had conspired with an "open

population" inmate by "sending letters to each other through the library."
*Id.* at 2.

Plaintiff's letters were obtained and were translated from Spanish to
English.[5]  *Id.*  In those letters, Plaintiff requested the other inmate submit
affidavits asserting that Plaintiff's life was in danger, and if he "needed to
exaggerate, to do it."  *Id.* at 3.  Plaintiff instructed the other inmate to throw
away the letter and "never say that they communicate[d] through the
library."  *Id.* at 4; *see also* ECF No. 138 at 49-51.  When questioned by the
officer investigating the DR, Plaintiff admitted that he was communicating
with the other inmate through an inmate law clerk.  ECF No. 128-4 at 4.

Plaintiff was given an opportunity to challenge the DR in a hearing
held on June 19, 2012.  *Id.* at 3.  Plaintiff declined staff assistance, but was
present during the hearing and pled "not guilty."  *Id.*  Plaintiff did not list any
witnesses to provide a statement on his behalf, nor did he present any
evidence.  ECF No. 132-3 at 11-12.

---

[5] The report was written on June 12, 2012, but concerned a search undertaken
on June 8, 2012.  Delay in writing the report was due to the need to translate the
letter(s) obtained.  ECF No. 128-4 at 2-3.

Defendants separately filed the relevant correspondence[6] which was
submitted as evidence in the DR, ECF No. 132-3 at 18-41, but Plaintiff also
included copies of the correspondence in his opposition to summary
judgment.  ECF No. 138 at 39-56.  The correspondence from Plaintiff, who
refers to himself as "Gato," to another inmate who uses the nickname
"Alex," was provided.  ECF No. 132-3 at 5-6; *see* ECF No. 132-3 at 19-28.
Plaintiff said in one of the letters that "a lot of people try to use the system
to move to better places.  I had to lie and try to manipulate the system."
ECF No. 132-3 at 26.  In another letter, Plaintiff requested that "Alex" "fill
out an affidavit explaining everything that you told me in a letter."  ECF No.
132-3 at 37.  In particular, Plaintiff requested that he say that a gang
wanted Plaintiff dead, that he had "a high profile case."  *Id.*  Plaintiff said, "if
you have to exaggerate a little do it."  *Id.*  Plaintiff instructed "Alex" to write
it like "a story, everything that happened organized."  *Id.*  Plaintiff advised
that if he would help him, Plaintiff would have his private lawyer get him
moved as well to "a safe (more secure) place."  *Id.*  Finally, Plaintiff ended
the letter by telling "Alex" to "throw away this letter when you receive it.

---

[6] Defendants requested that it be considered as a supplemental summary
judgment exhibit.  Even without that request, Rule 56(c) permits the Court to "consider
other materials in the record" in addition to material cited in support of or in opposition to
summary judgment.  Fed. R. Civ. P. 56(c)(3).

Never say that we communicate through the library.  It was through my sister."  *Id.*

The DR was written by Officer Ingram and approved by an official named Bell.  ECF No. 128-4 at 3.  The investigating officer was Sergeant Bashore and Officers Williams and Proffit provided witness statements.  *Id.; see also* ECF No. 132-3 at 10.  The DR was heard by Officers Santiago and Baine, and reviewed by Churchwell.  *Id.* at 4.  Ultimately, Plaintiff was found guilty of the charge and sentenced to 30 days in disciplinary confinement.  ECF No. 128-4 at 3-4.  There is no evidence showing that either Defendant had any involvement in the DR proceedings.

However, both Defendants were part of the 3-member ICT which recommended that Plaintiff's status be upgraded to Close Management ("CM") II.  Craven affidavit, ECF No. 128-8 at 2 (Ex. G); Schweinsberg affidavit, ECF No. 128-9 at 2.  The ICT makes recommendations as to "the classification status of inmates" within a particular facility, however, "the ultimate authority to make determinations regarding Classification decisions, including placement of inmates in Protective Management ("PM") or Close Management ("CM") housing is the decision of the State Classification Office ("SCO")."  ECF No. 128-8 at 2; ECF No. 128-9 at 2. The SCO is free to agree or disagree with the ICT's recommendation.  *Id.*

Defendant Craven's affidavit states that Plaintiff's disciplinary proceedings revealed that Plaintiff and another inmate were "exchanging letters with one another," which is prohibited because of Plaintiff's protective management status, and the letters indicated "a scheme . . . to exaggerate the severity of Plaintiff's situation to obtain a transfer on behalf of Plaintiff to another state through the Interstate Compact." ECF No. 128-8 at 3. Defendant Craven states that the recommendation for CM status was due to "Plaintiff's behavior and conviction of the DR." *Id.*

Defendant Schweinsberg submitted a similar affidavit. ECF No. 128-9 (Ex. H). This Defendant states that during Plaintiff's ICT hearing, Plaintiff began to argue about his placement recommendation. *Id.* at 2. Defendant Schweinsberg told Plaintiff "that he would be placed on CM based on his behavior as described within the DR." *Id.* This Defendant denies making any comments about Plaintiff's sentence or in telling Plaintiff there was a lesson for him. *Id.* Rather, Defendant Schweinsberg says that he made the statement to inform Plaintiff that a "decision had been made and to stop the continued argument . . . ." *Id.*

In March 2013, after remaining "DR free," demonstrating a "positive adjustment," and enrolling in an "adult basic education program," Plaintiff's status was downgraded to CM-III while housed at Santa Rosa C.I. ECF

No. 128-5 at 2-3.  There was no involvement by Defendants in that decision.  *Id.*  In September 2013, Plaintiff was released from CM status.  ECF No. 128-6 at 2-3.  Although released, Plaintiff was to remain in PM status and was transferred to an appropriate facility.  *Id.*  Again, Defendants were not involved in that decision or recommendation.  *Id.*

Both Defendants advise that they cannot provide Plaintiff with the relief requested in this case if he were successful.  ECF No. 128-9 at 3; ECF No. 128-8 at 3.  Defendant Craven no longer works for the Department of Corrections and, thus, states that he could not expunge Plaintiff's disciplinary record.  ECF No. 128-8 at 3.  Defendant Schweinsberg states that he works at Marion Correctional Institution, not the location where the recommendation was initially made, Northwest Florida Reception Center, and the Department would have no obligation to consider any request to expunge Plaintiff's records.  ECF No. 128-9 at 3.  Furthermore, he points out that the "decision of the SCO has been final for several years."  *Id.*

In opposing summary judgment, Plaintiff submitted an affidavit from inmate Edwin Coffee which states that when the PM unit was closed at Wakulla C.I., the unit was relocated to Washington C.I., now known as the Northwest Florida Reception Center.  ECF No. 138 at 125 (Coffey

affidavit).  Upon the arrival of the transferred PM inmates, "Sergeant Ingram and the head Classification Officer [Defendant] Craven gave the entire unit speeches saying that Washington C.I. was not like Wakulla C.I. and they were not going to tolerate greivances [sic]."  *Id.*  Inmate Coffee further reported that "they also indicated that they would not tolerate family or outside friends to call in with complaints."  *Id.*  Inmate Coffee averred that such comments were "given several times within the next several months."  *Id.*

A similar affidavit was submitted by Inmate Pablo Colon.  ECF No. 138 at 126-127.  He recalls that prison officials told the inmates arriving at Washington from Wakulla that constant grievances would not be tolerated and if they got "out of line in any way," there would be repercussions. *Id.* at 126.  He said they were told that if they thought their families could intervene, they were "surely mistaken."  *Id.*  Inmate Colon said that he felt threatened, intimidated and scared enough that he did not dare write any grievances while at Washington C.I.  *Id.* at 126-127.

Inmate Sean S. Piggott also submitted an affidavit, ECF No. 138 at 131-132, in which he stated that in December 2012 (after the events in this case), he was present when Defendants Craven and Schweinsberg addressed the dormitory.  Inmate Piggott relates that all inmates were

standing at attention on deck when Defendant Craven said, "If you continue to cause problems by fileing [sic] grievences [sic] and calling your familys [sic] to have them call here I will put you on (CM) closed [sic] management like I did to Alveraz [sic] and Patino."  *Id.* at 131.

As additional evidence, Plaintiff submitted a copy of an email which was sent from a "cousin/family member" of the Plaintiff to Amy Ulshafer, the Executive Assistant to the Secretary.  ECF No. 138 at 132-134.  The email was sent on October 7, 2011, (prior to the events at issue here), and was referred to the institution for an appropriate response.  Defendant Craven responded on behalf of Warden Churchwell on October 14, 2011. *Id.* at 133-136.  Defendant Craven advised that prison officials had taken "proactive measures to continue to ensure the safety" of PM unit inmates. *Id.* at 135.  For example, Defendant Craven explained that a screening process which was in place "revealed a potential conflict" with an inmate pending transfer into the institution and Plaintiff.  *Id.*  Because of that process, the "issue was addressed, and the other inmate was diverted to a different PM Unit altogether."  *Id.*  Because of various protective procedures that were in place, Defendant Craven advised that "an out of state transfer [was] not warranted" to protect Plaintiff.  *Id.*

Plaintiff also submitted evidence indicating that in late May 2013, after the events which he alleges happened with the named Defendants, he filed a grievance claiming he was improperly housed with a non-PM inmate.  ECF No. 138 at 29-30.  The response noted that Plaintiff was correct, but the "error" had been corrected and security directed to properly house Plaintiff in the future.  *Id.*  That grievance is unconnected with the named Defendants,[7] but submitted presumably to show that PM is not sufficient to protect him.  *See also* ECF No. 138 at 138-147.

Although Plaintiff did not submit his own affidavit in opposing summary judgment, his fifth amended complaint is sworn under penalty of perjury.  ECF No. 72 at 11.[8]  Plaintiff declared in his complaint that Defendant Craven made statements which were considered threats of retaliation if inmates filed grievances or had their family contact the

_____

[7] Plaintiff also submitted numerous grievances with his response to summary judgment.  ECF No. 138.  None of those grievances were submitted to, or responded by, the named Defendants.  *Id.*

[8] Plaintiff's complaint may be considered as evidence in ruling on a summary judgment motion.  Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019) (stating that statements made "in his verified complaint, sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response should have been treated as testimony by the district court" in ruling on summary judgment motion) (citing United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[O]ur cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.") and Barker v. Norman, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves as the equivalent of an affidavit for purposes of summary judgment)).

institution.  ECF No. 72 at 5.  Plaintiff said that he continued to make complaints, verbally at monthly ICT PM status reviews where Defendant Craven was present, and also in written grievances.  *Id.* at 6.  He said that his family also made phone calls and sent emails on his behalf.  *Id.*

Plaintiff said that after he served his 30-day disciplinary confinement penalty for the DR received on June 8, 2012, he was returned to PM.  ECF No. 72 at 7.  Plaintiff remained in PM for approximately 3 weeks without incident until his next scheduled "routine monthly ICT PM review."  *Id.*  That review occurred on August 6, 2012, with Defendants Craven and Schweinsberg present, along with Assistant Warden Norma Kelly.  *Id.* at 7-8.  Defendant Craven said, "I've got another e-mail from your family" and waived it in front of Plaintiff and the ICT.  *Id.* at 8.  Plaintiff again asked for an Interstate Compact Transfer, but Defendant Craven said, "We are going to deny your request."  *Id.*  Defendant Craven said, "You're not going to have to worry about any of this.  We've got a place for you."  *Id.*  Plaintiff considered that statement a threat.  *Id.*

The following day, Plaintiff said that he was placed in CM pending a referral for placement there.  *Id.*  Plaintiff said that the timing of the CM referral was "irregular and/or unprecedented" after being released from disciplinary confinement because Plaintiff did not receive a new or

additional DR.  *Id.*  Furthermore, during Plaintiff's later ICT review on September 6, 2012, he said that Defendant Schweinsberg interrupted him when Plaintiff was presenting his defense.  ECF No. 72 at 8-9.  Plaintiff said that Defendant Schweinsberg told him: "It doesn't matter what you say.  We've already decided we're sending you to CM.  You've got a life sentence to do, so this is a lesson you can learn from."  *Id.* at 9.

**Analysis**

Plaintiff's claim is that he was placed in CM status by the Defendants in retaliation for exercising his First Amendment right to file grievances and seek redress concerning the conditions of his confinement.  ECF Nos. 72 at 12, 138 at 9.  He argues that the DR was a "ruse" because he had already served his time in disciplinary confinement.  ECF No. 138 at 9.

Defendants, on the other hand, assert that Plaintiff's DR was the basis for his placement in CM.  ECF No. 128 at 3.  They point out that his placement was recommended by his classification officer, and approved by the ICT, but the ultimate decision was made by the State Classification Office (SCO).  *Id.* at 15.  Defendants also argue that summary judgment should be granted in their favor because Plaintiff's claim is barred by O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011), and that they are unable to provide Plaintiff with the relief requested.  ECF No. 128.

## 1.    Relief

Defendants first argue that Plaintiff's request to be placed back on PM is moot because he "has been off-and-on PM status since his release from CM in September 2013."  ECF No. 128 at 7.  That argument is rejected because Plaintiff did not request PM placement as relief in his complaint.  ECF No. 72 at 11-12.  Moreover, Plaintiff responded by stating he "is still a Protective Management inmate not on and off PM."  ECF No. 138 at 3-4.

Defendants next assert that they "should be dismissed because" they are unable to afford Plaintiff the relief requested, that is, expungement of the Department's records reflecting CM referral and placement.  ECF No. 128 at 7-8.  Defendants are no longer ICT members at Plaintiff's facility, *id.* at 9-10, and even if they were in a position to make a recommendation as to Plaintiff's records, the "ultimate determination on whether to enact such action is done by the State Classification Team ("SCT")."  *Id.* at 8-9 (citing FLA. ADMIN. CODE R. 33-601.209).  Further, Defendant Craven no longer works for the Department of Corrections.  *Id.* at 10.

In addition to requesting that injunctive relief, Plaintiff also requested that a declaratory judgment be issued and that he be provided nominal and punitive damages.  ECF No. 72 at 11-12.  Plaintiff's request for punitive

damages has been dismissed, *see* ECF No. 115, but his request for nominal damages remains.  Thus, even if Defendants are not in a position to provide injunctive relief, Plaintiff's damages claim would remain. Because this argument is insufficient to justify granting summary judgment in Defendants' favor and terminate this litigation, resolution should be deferred pending a decision on the merits.

## 2.    Retaliation Claim is Barred

Defendants argue that summary judgment is appropriate as to the merits of Plaintiff's retaliation claim because his CM "placement was in large part based on a DR conviction in which he was afforded Due Process" and evidence was presented to support the disciplinary charge. ECF No. 128 at 10-11.  They contend that any such retaliation claim should be barred by O'Bryant v. Finch, 637 F.3d at 1215, as Plaintiff is necessarily challenging a DR.  *Id.*

Plaintiff, on the other hand, contends the discipline was a ruse and occurred two months before he was referred for CM custody.  ECF No. 138 at 9.  He clarifies that he is not claiming that "the erroneous disciplinary report" constituted retaliation.  *Id.* at 7-8.  He states that although he "believed" the June disciplinary "confinement constituted retaliation," he is not challenging it.  *Id.*  In other words, although he believes it was

"erroneous" and "retaliation," he is not raising it as a claim because he recognizes that it would be barred by O'Bryant. *Id.* at 7-9. Instead, this case is concerned only with his claim that his CM confinement was retaliatory because it occurred well after a two-month old DR and several weeks after his release from disciplinary confinement. *Id.* at 8-9. Plaintiff argues that O'Bryant "does not insulate Defendants from" his retaliation claim challenging CM confinement. *Id.* at 9.

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (quoted in O'Bryant, 637 F.3d at 1212). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Farrow, 320 F.3d at 1248) (quoted in O'Bryant, 637 F.3d at 1212)). It is also well established that punishing an inmate for filing grievances by issuing a false disciplinary report states a valid First Amendment claim. *See* Malloy v. Peters, 617 F. App'x 948, 950 (11th Cir. 2015); O'Bryant, 637 F.3d at 1212; Mosley, 532 F.3d at 1276. Such a claim requires an inmate to prove three things: "(1) his speech was constitutionally protected;

(2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." Mosley, 532 F.3d at 1276.

However, "[a]n inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process."[9] Malloy, 617 F. App'x at 950 (citing O'Bryant, 637 F.3d at 1215). In other words, there is no causal connection (the third required element) between a disciplinary report and a prisoner's freedom of speech if the disciplinary action would have been taken regardless of the prisoner's protected speech. O'Bryant, 637 F.3d at 1217 (citing Mosley, 532 F.3d at 1278, n.22). "Any possible causal connection between the protected activity (the grievances) and the harm (the disciplinary charges and sanctions) is severed since the harm is not in

---

[9] "Adequate due process requires that the inmate have (1) advance written notice, (2) an opportunity to present witnesses and evidence at his disciplinary hearing, and (3) a written statement from the factfinder outlining the evidence relied upon and the reasons for the disciplinary action." Malloy, 617 F. App'x at 950 (citing O'Bryant).

reaction to any protected activity, but directly due to an improper activity."

O'Bryant, 637 F.3d at 1219-20.

Here, Plaintiff argues that O'Bryant should not apply.  ECF No. 138 at

7-9.  He contends that O'Bryant should not be extended to a CM decision

made two months after a disciplinary hearing.  *Id.*  In opposing summary

judgment, Plaintiff contends it "is unprecedented for an inmate to serve his

confinement for a [DR] and be released from confinement to general

population [PM unit]," only to be placed in CM a month later.  *Id.* at 9.

Plaintiff presented argument on that point, but not evidence.

Nevertheless, judicial notice has been taken of the Department's

Administrative Rules in which Close Management (CM) is defined as "the

confinement of an inmate apart from the general population, for reasons of

security or the order and effective management of the institution, where the

inmate, through his or her behavior, has demonstrated an inability to live in

the general population without abusing the rights and privileges of others."

FLA. ADMIN. CODE R. 33-601.800(1)(d).[10]  There are "three individual levels

(CMI, CMII, and CMIII) associated with close management, with CMI being

the most restrictive single cell housing level and CMIII being the least

---

[10] Citation is to the version of the Rules which were effective 1-4-2012, and in place during the events in question.

restrictive housing of the three CM levels." FLA. ADMIN. CODE R. 33-

601.800(1)(e).  Plaintiff was placed in the middle level, CM-II, which "may

or may not be restricted to single cell housing." FLA. ADMIN. CODE R. 33-

106.800(2)(b)1.

Pursuant to Departmental Rules, the following factors justify

placement in CM-II status:

a.  An act or acts in the community, during other periods of
confinement, or any circumstances associated with the current
period of incarceration such that safety, security, and public
safety concerns suggest further review prior to placement in open
population;

b.  A pattern of predatory actions which makes an inmate a threat to
others;

c.  An act causing injury or an act which could have resulted in injury
to another;

d.  An escape or an escape attempt from within the secure perimeter
of a facility without violence, the use of weapons, the taking of
hostages, the use of equipment or tools, or outside assistance;

e.  Participation in riots or disorders during any period of
incarceration;

f.  A pattern of behavior during the present period of incarceration
involving acts of violence or threats of violence;

g.  Initiated or participated in a contraband trafficking operation
involving negotiables, escape paraphernalia [other than items
listed in sub-subparagraph (2)(a)2.h.], or other items that present
a threat to the safe and secure operation of the institution or
facility;

    h.   Presents a risk to another inmate's safety and well being in population, as identified by an act or acts which demonstrates an inability to live in general population without endangering others;

    i.   Is currently CMIII and shows an inability to adjust as evidenced by subsequent major rule violation(s).

Fla. Admin. Code R. 33-601.800(2)(b). In Plaintiff's case, the referral for assignment to CM-II listed the first reason ("a") as the basis for the recommendation. ECF No. 128-3 at 2. Although somewhat generic, the act charged in Plaintiff's DR was a security breach and Plaintiff's correspondence with the other inmate revealed Plaintiff was attempting create a security issue to justify his transfer. Plaintiff was requesting another inmate "exaggerate" his situation to manipulate the system and get a transfer. That is an act which raises security concerns.

The Rules direct that if an inmate is housed in general population and commits an act which forms the basis for CM custody, the inmate is to "be placed in administrative confinement pending close management review." Fla. Admin. Code R. 33-601.800(3)(b). However, inmates confined "in any other confinement status . . . shall be housed in his or her current status pending close management review." *Id.* More specifically, the Rule states that "[i]nmates being considered for close management who have completed disciplinary confinement and the final decision regarding close

management placement has not been determined will be housed in administrative confinement until the review and decision is made by the SCO." *Id.* Although Plaintiff made *argument* concerning the propriety of a CM referral after release from disciplinary confinement, Plaintiff did not submit any *evidence* which shows that a CM review could not be made following such release. Indeed, the Rule specifically contemplates that such could occur and the prisoner would be kept in administrative confinement until a decision was made.

Additionally, Plaintiff *argued* that the CM proceedings were a "ruse" because of delay between issuance of the DR and the referral. ECF No. 138 at 9. Defendants' evidence shows that Plaintiff was charged with "attempt to conspire" and the DR was written on June 12, 2012. ECF No. 132-3 at 6. The hearing was held on June 19, 2012, *id.* at 11, and Plaintiff was found guilty and sentenced to 30 days in disciplinary confinement. ECF No. 128-4 at 4. Although the parties did not provide any evidence as to when Plaintiff served that time, it is presumed that his 30 days were served between June 19, 2012, and July 19, 2012.

The CM referral was prepared by Officer Swearington on August 29, 2012, a delay of approximately 5 weeks after Plaintiff's release, and 11 weeks from writing the DR. The reason for that delay is not explained, and

no evidence has been presented to show that Plaintiff committed other
infractions between release from disciplinary confinement and issuance of
the CM referral.  Indeed, Plaintiff alleged that there was not "a new or
additional disciplinary report."  ECF No. 72 at 8.  He said that he was
released from disciplinary confinement "without incident" prior to his ICT
review.  *Id.*

      The Eleventh Circuit Court of Appeals has frequently held that a
sworn complaint may serve as the equivalent of an affidavit for purposes of
summary judgment.  Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir.
2019) (citing Barker v. Norman, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981);
Williams v. Rickman, 759 F. App'x 849, 852 (11th Cir. 2019) (reversing
summary judgment because prisoner's "verified complaint, which serves as
the equivalent of an affidavit," presented a version of events in conflict with
defendants' version and stating that the non-moving party's version must
be credited when conflicts arise between the parties).  Statements made in
a "verified complaint" alone may raise a genuine issue of fact sufficient to
defeat summary judgment.  Stallworth v. Tyson, 578 F. App'x 948, 951
(11th Cir. 2014) (noting that "in response to the summary judgment
motion," the prisoner "cited to his amended verified complaint" to support
his retaliation claim); *see also* Dobbins v. Giles, 451 F. App'x 849, 850

(11th Cir. 2012) (stating that "[i]f an inmate submits a sworn complaint, the factual allegations therein are sufficient for summary judgment purposes, and he need not file a separate affidavit.") (citing Sammons v. Taylor, 967 F.2d 1533, 1544, n.5 (11th Cir. 1992)).  Additionally, a "self-serving and/or uncorroborated affidavit" may also be sufficient to preclude summary judgment.  United States v. Stein, 881 F.3d 853, 859 (11th Cir. 2018).  As noted above, all reasonable inferences must be viewed in the light most favorable to Plaintiff as the non-moving party.  Jean-Baptiste v. Gutierrez, 627 F.3d 816, 820 (11th Cir. 2010) (quoted in Dobbins, 451 F. App'x 850).

Here, Plaintiff contends that the delayed CM referral must be due to retaliation because he committed no additional acts to prompt the referral. Further, Plaintiff's sworn complaint stated that Plaintiff's family sent an email directly to Defendant Craven on the "same day" that his "monthly ICT review" took place.  ECF No. 72 at 7.  At that review, Defendant Craven held up the email and waived it, announcing that he "got another e-mail from" Plaintiff's family.  Id. at 8.  When Plaintiff requested that he be "re-recommended for [an] Interstate Compact Transfer," Defendant "Craven literally snatched the request from" Plaintiff and said "We are going to deny your request." ECF No. 72 at 8.  Defendant Craven then is alleged to have said, "You're not going to have to worry about any of this.  We've got a

place for you." *Id.* That place turned out to be CM and the following day,
"Plaintiff was placed on confinement." *Id.* Those allegations, presented
within Plaintiff's complaint, sworn under penalty of perjury, present
evidence showing protected First Amendment activity and provide a basis
for inferring that Plaintiff's placement in confinement was due to retaliation
and not because of the DR.[11] It is also significant that an affidavit declared
that Defendant Craven told inmates that if they caused problems by filing
grievances or had their families do so, they would be placed on CM status
as happened to Plaintiff.

Notably, Defendants submitted evidence which shows a connection
between Plaintiff's DR and the ICT referral, but they suggest there is no
causal connection to the named Defendants. The CM referral was based
on facts derived from the DR, but the referral was written by an officer who
is not a named Defendant. However, no explanation was provided to
explain why a DR which was issued some 11 weeks earlier should prompt
a CM referral at that time. The only evidence of an intervening factor or
event was Plaintiff's request for an Interstate Compact Transfer and

---

[11] The summary judgment evidence Plaintiff submitted also shows that he wrote
an appeal of his DR during that time period which was directed to the Warden. ECF No.
138 at 65-66. Plaintiff's appeal was submitted on June 29, 2012, but no response was
provided until August 6, 2012. *Id.* at 66. August 6th is the date Plaintiff alleged that his
family sent the email to Defendant Craven. Dc. 72 at 7.

"another" email sent by Plaintiff's family to Defendant Craven.  Viewed in the light most favorable to Plaintiff, that evidence leads to the inference that the CM process was due to retaliation and not poor behavior.

One concern with Plaintiff's sworn complaint is that Plaintiff alleged that his "family sent an e-mail to Craven directly" on August 6, 2012.  ECF No. 72 at 7.  He said it was received "just prior to the ICT monthly review to be held later that day."  *Id.*  7.  However, the documentary evidence presented by Defendants seems to be in conflict with that assertion.  First, the referral for CM was not made until August 29, 2012, and there is no documentary evidence showing that a "monthly ICT review" took place on August 6th.  Second, it was made by Classification Officer Swearington, not the Defendants.  The Defendants were not involved until September 5, 2012, when the ICT hearing convened.  Plaintiff further alleged in his complaint that after Defendant Craven made the statement on August 6th, he was "placed in confinement" the "very next day" and "held pending a referral for possible placement in close management status."  ECF No. 72 at 8.

A jury may conclude that Plaintiff was mistaken as to the date of the events, but believe his testimony.  On the other hand, a jury could also disbelieve these facts occurred at all because the dates do not coincide

with the documentary evidence and Plaintiff has not, up to this point anyway, submitted a copy of the e-mail sent directly to Defendant Craven. However, our legal system entrusts these decisions "to a jury sitting as finder of fact, not a judge reviewing a paper record." Salazar-Limon v. City of Houston, Tex., 137 S. Ct. 1277, 1278, 197 L. Ed. 2d 751 (2017) (Sotomayor, J., dissenting). This is a genuine dispute of material fact which precludes granting summary judgment.

**O'Bryant's Impact**

As noted above, Defendants argue that Plaintiff's claim cannot go forward because the CM confinement was a result of a DR for which Plaintiff was found guilty and such a claim is barred under O'Bryant v. Finch. ECF No. 128 at 10-14. It is undisputed that the basis for making the CM referral was Plaintiff's DR. It is undisputed that Plaintiff had a disciplinary hearing and was afforded due process. Plaintiff declined staff assistance, did not present any evidence on his behalf other than his own statement. It is undisputed that prison officials produced evidence to support the charge (letters between the two inmates). Plaintiff's response to the summary judgment motion reveals that he does not deny sending the letters to the other inmate. ECF No. 138 at 10-11. Within a grievance appeal to the Warden, Plaintiff also acknowledged that he wrote the letters,

but he argued that his comments were taken out of context.  ECF No. 138 at 65.

Accordingly, the fact remains that Plaintiff was convicted of a DR based on his secretly sending impermissible letters to another inmate. Such conduct violates the Department's rules, as Plaintiff is aware, *see* ECF No. 72 at 7, and may permissibly be punished through a DR or placement in CM.  In this case, Plaintiff received punishment in the DR process.  The legal question raised is whether a prisoner's claim for retaliation should be barred when the alleged act of retaliation operates as an extension of a DR for which the prisoner was found guilty after being afforded due process.  No case has been cited by Defendants, nor independently found by the Court, which reveals that another court has extended O'Bryant in this fashion.

This Court agrees that a CM referral based on a DR *could* operate as an extension of punishment.  The Rules permit doing so even after an inmate has "completed disciplinary confinement." FLA. ADMIN. CODE R. 33-601.800(3)(c).  The reality is that prison discipline may take the form of a disciplinary report or placement in more restrictive housing such as close management.  When punishment is imposed on a prisoner who has been found guilty in a prison disciplinary hearing and the charge is supported by

evidence, it should not be subject to challenge later as an act of retaliation, even if the punishment is indirectly imposed through a subsequent, separate close management process.  That is so even if a defendant's subjective feelings about a particular prisoner reveal animosity.  <u>Hartman v. Moore</u>, 547 U.S. 250, 260, 126 S. Ct. 1695, 1704, 164 L. Ed. 2d 441 (2006) (stating that "[i]t may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.").

However, in this case the connection between CM and the DR is too attenuated.  Plaintiff was not considered for CM as part of the discipline issued by the disciplinary hearing team.  Instead, it was imposed some 11 weeks later, and after Plaintiff had been released from his disciplinary confinement.  If it were a shorter period of time, or if some explanation had been provided as to the reason for the delay, it may not matter.  In this case, however, it matters.  There is a genuine dispute of fact as to whether the Defendants recommended Plaintiff be placed on CM status because of his grievances and recent complaints presented by his family rather than as an extension of disciplinary punishment.  The recommendation for CM did not come simultaneously with the disciplinary hearing but was indirectly

imposed nearly three months later.  Under these facts, O'Bryant should not

be extended, even though Plaintiff admits that he sent the letters for which

he received a DR and it is undisputed that he was found guilty in the

disciplinary hearing.  Plaintiff's retaliation claim should be decided by a jury.

## 3.    Claim Cannot Proceed Against the Defendants

Defendants' final argument is that "Plaintiff cannot realistically state a

claim against Defendants."  ECF No. 128 at 14.  They contend that the 3-

member ICT merely concurred with the referral submitted by Officer

Swearington.  *Id.*; *see also* ECF No. 128-3 at 3.  On September 6, 2012,

the SCO approved the recommendation.  *Id.*  Thus, Defendants' only

involvement was participating in the ICT hearing, a middle ground in the

process of CM confinement.

In response, Plaintiff suggests that the SCO would most likely

approve the recommendation made by the Defendants.  ECF No. 138 at

15-16.  Viewing the evidence in the light most favorable to Plaintiff, he has

shown that Defendant Craven declared prior to Officer Swearington's CM

referral that "We've got a place for you."  It suggests that Defendants

orchestrated his placement in CM.  Although an ultimate decision was

made by the state SCO, which appears to be one prison official and not a

committee,[12] the inference which must be made in Plaintiff's favor is that Defendants actions resulted in placing Plaintiff in CM status.  In light of the disputed evidence presented, a jury should determine whether Plaintiff or Defendants' version of these events is true.[13]

**Recommendation**

It is respectfully **RECOMMENDED** that the Defendants' motion for summary judgment, ECF No. 128, be **DENIED** because there is a genuine dispute of material fact.  It is further **RECOMMENDED** that this case be **REMANDED** for further proceedings prior to setting this case for trial.[14]

**IN CHAMBERS** at Tallahassee, Florida, on June 14, 2019.

 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

---

[12] The "State Classification Office (SCO)" is defined as "a staff member at the central office level who is responsible for the review of inmate classification decisions." FLA. ADMIN. CODE R. 33-601.800(1)(q).  The SCO reviews the recommendations of the ICT and "will approve, disapprove, or modify the ICT's recommendation . . . ."  FLA. ADMIN. CODE R. 33-601.800(3)(h).

[13] In light of this recommendation, further proceedings should be convened after a ruling is entered on this Report and Recommendation to address Defendants' argument that Plaintiff cannot be provided injunctive relief.

[14] Both Plaintiff, ECF No. 72 at 1, as well as the Defendants, ECF No. 117 at 5, have demanded a jury trial.

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**